A98A1132. IN RE J. S. G., a child.
(505 SE2d 70)

SMITH, Judge.

David Howard Earwood appeals from the trial court's order denying his petition for adoption. Upon review, we conclude that the trial court construed OCGA § 19-8-3 (c) too narrowly and that the petition should have been granted. We therefore reverse the judgment below.

The record shows that J. S. G. is the natural child of John Edward Gillespie and Gregg Hoglen. Earwood later married Hoglen, and during that marriage he established a parental relationship with his stepson, J. S. G. Earwood and Hoglen divorced before this adoption was initiated, and Earwood subsequently remarried. Earwood then filed a petition to adopt his former stepson, with whom he retained a close relationship even after divorcing J. S. G.'s mother.

Hoglen acknowledged service and consented to the adoption, and Gillespie, the biological father, surrendered his parental rights and agreed to the adoption.

The trial court recognized that "a strong familial bond was established between" Earwood and J. S. G., that Earwood was continuing to provide both monetary and emotional support for J. S. G., and that they had "a sound, caring father-son relationship." The court found, however, that OCGA § 19-8-3, which governs the subject of who may adopt a child, presented an insurmountable obstacle to the grant of Earwood's petition for adoption.

OCGA § 19-8-3 (c) provides that when "a person seeking to adopt a child is married, the petition must be filed in the name of both spouses; provided, however, that, when the child is the stepchild of the party seeking to adopt, the petition shall be filed by the stepparent alone." Reasoning that the petition could not be filed in the names of both Earwood and his wife because J. S. G. had a natural mother, Hoglen, and that the exception provided in subsection (c) for a "stepchild" did not apply because Earwood was no longer the stepfather of J. S. G., the trial court found that the requirements in OCGA § 19-8-3 could not be met.

We agree that the petition could not be filed in the names of both Earwood and his current spouse. We conclude, however, that the trial court construed the stepparent exception set forth in OCGA § 19-8-3 (c) too narrowly. We find that in this case, on these unusual facts, such a narrow construction should not have been applied to deny this adoption.

The trial court reasoned that OCGA § 19-8-3 (c) excepts only stepparent adoptions and pursuant to OCGA § 19-8-6 (a) (1), "the petitioner in a stepparent adoption must be the spouse of one of the natural parents of the minor child." But OCGA § 19-8-3 (c), which creates the exception, does not refer to OCGA § 19-8-6 (a). It simply provides that the petition may be filed without joining a spouse "when the child is the stepchild of the party seeking to adopt." Earwood's petition for adoption may be granted, therefore, if J. S. G. is his "stepchild."

The terms "stepchild" and "stepparent" or "stepfather" are not defined in our Code. Neither have we found any case law defining these terms. We are required to give the term "stepchild" in the statute its "ordinary signification." OCGA § 1-3-1 (b). Black's Law Dictionary 1413 (6th ed. 1990) defines "step-father" as "[t]he husband of one's mother by virtue of a marriage subsequent to that of which the person spoken of is the offspring." Webster's New Universal Unabridged Dictionary 1784 (2nd ed. 1983) defines "stepparent" as "the person who has married one's parent after the death or divorce of the other parent." Neither definition includes a temporal restriction. And

Earwood *did* marry J. S. G.'s mother subsequent to the dissolution of the union of which J. S. G. is the issue; he *was* the husband of J. S. G.'s mother at one point. We conclude, therefore, that the exception embodied in OCGA § 19-8-3 (c) may be applied to this situation, specifically allowing Earwood to petition for the adoption of J. S. G. without joining his current spouse.

While we recognize the trial court's careful and well intentioned construction of the statute, under these circumstances we must reject it. Had Earwood petitioned the court to adopt J. S. G during his marriage to Hoglen, the adoption unquestionably would have been granted. And the trial court found that this adoption, even now, would be in the best interest of J. S. G. It cannot be better for any of the parties to force the man who has not supported or cared for J. S. G. and has willingly surrendered his parental rights to remain J. S. G.'s legal father, while denying the status of legal father to the man who has been a father to the child in fact and wishes to continue to do so. That would epitomize the elevation of form over substance, which we decline to do.

*Judgment reversed. Johnson, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED JULY 30, 1998.

*James T. Irvin*, for appellant.
John E. Gillespie, *pro se*.